IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

ERIC MATTHEW NEGRIN, :
:
       Plaintiff, :
:
V. :
: NO. 5:21-cv-00245-MTT-MSH
RICHARD CHATMAN, *et al.*, :
:
       Defendants. :
_____ :

**ORDER**

Plaintiff Eric Matthew Negrin, who is currently a prisoner in Autry State Prison, filed a civil rights complaint under 42 U.S.C. § 1983 relating to conditions when he was a detainee in the Wilkinson County Jail in Irwinton, Georgia. Compl., ECF No. 1. Plaintiff was granted leave to proceed *in forma pauperis* and ordered to recast his complaint. Order, ECF No. 4. Thereafter, Plaintiff filed a recast complaint, which underwent a preliminary review. Following that review, Plaintiff filed an objection to the recommendation, which was construed as a motion to amend and granted. Obj., ECF No. 26; Order to Amend Compl., ECF No. 28.

Plaintiff has now filed his amended complaint, which is ripe for preliminary review. Recast Compl., ECF No. 30. On that review, it is **RECOMMENDED** that Plaintiff's claims against the Wilkinson County Water Authority and the City of Irwinton be **DISMISSED WITHOUT PREJUDICE**. To the extent that he intended to raise a retaliation claim, it is also **RECOMMENDED** that any such claim be **DISMISSED**

**WITHOUT PREJUDICE** for failure to state a claim. Plaintiff will be permitted to proceed for further factual development on his deliberate indifference to a serious medical need claim against Defendants Nurse Tina Howell and Dr. James Graham and his deliberate indifference to safety claim against Sheriff Richard Chatman, Captain Buster King, and Officers Enrique Marcus, Sharonda Adside, Bernice Ford, Robinson, Mayes, and Butler.

## PRELIMINARY REVIEW OF PLAINTIFF'S COMPLAINT

### I. Standard of Review

Because he has been granted leave to proceed *in forma pauperis*, Plaintiff's complaint is now ripe for preliminary review. *See* 28 U.S.C. § 1915A(a) (requiring the screening of prisoner cases) & 28 U.S.C. § 1915(e) (regarding *in forma pauperis* proceedings). When performing this review, the court must accept all factual allegations in the complaint as true. *Brown v. Johnson*, 387 F.3d 1344, 1347 (11th Cir. 2004). *Pro se* pleadings are also "held to a less stringent standard than pleadings drafted by attorneys," and thus, *pro se* claims are "liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted). The Court may dismiss claims that are based on "indisputably meritless legal" theories and

"claims whose factual contentions are clearly baseless." *Id.* (internal quotation marks omitted). A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (first alteration in original). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under §1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cty*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

II.   Plaintiff's Allegations

In his recast complaint, Plaintiff asserts that, one to two weeks after he arrived at the Wilkinson County Jail, he began experiencing severe pain in his kidneys and blood in his urine. Recast Compl. 5, ECF No. 30. Nurse Tina Howell and Dr. James Graham

3

were aware of Plaintiff's ongoing issues and deliberately waited over two months to send Plaintiff to a urologist for diagnosis and treatment. *Id.*

While Plaintiff was detained in the Wilkinson County Jail, he noticed that the toilets, sinks, and showers had a turquoise-green stain or film on them and that the water had a very strong chemical taste and smell. *Id.* Other inmates told Plaintiff that the copper pipes in the walls and ground were corroded and had been eroding for many years, causing the water in the facility to be contaminated since 2009. *Id.*

During his daily activities, Plaintiff regularly questioned Officers Enrique Marcus, Sharonda Adsine, Bernice Ford, Robinson, Mayes, and Butler about the contaminated water.[1] *Id.* Each of these officers repeatedly said that there was nothing they could do about the system because it would cost too much to fix it and that it had been that way for ten years and "no one's died yet." *Id.* Although they disregarded Plaintiff's concerns, each of these officers drank only bottled water, which was provided by Captain King. *Id.* Officer Enrique said that the water was supposed to have been tested but had not seen the results of any testing. *Id.* Plaintiff questions whether testing was performed by the Wilkinson County Water Authority and the City of Irwinton. *Id.* When Plaintiff questioned Captain King about the water situation, King became angry and swore at Plaintiff. *Id.*

Nurse Howell and the urologist that Plaintiff eventually saw both told him that his kidney problems and the blood in his urine could be related to the contaminated water. *Id.*

---

[1] Plaintiff identifies Officers Robinson, Mayes, and Butler by their last names only.

The urologist wanted to test the water because they could not find another reason why Plaintiff's kidneys were swollen and there was blood in his urine. *Id.* Shortly after Plaintiff filed federal grievances against Wilkinson County and its officials, however, they revoked his probation and sent him to prison in retaliation for the grievances. *Id.* at 6.

Plaintiff's recast complaint names Sheriff Richard Chatman; Captain Buster King; Nurse Tina Howell; Dr. James Graham; Officers Enrique Marcus, Sharonda Adside, Bernice Ford, Robinson, Mayes, and Butler; and the Wilkinson County Water Authority as defendants in this action. *Id.* at 4. It also appears that he may have intended to include the City of Irwinton, Georgia. *See id.* at 1. His claims against these defendants are discussed in turn below.

    III.    Plaintiff's Claims

        A.    Deliberate Indifference to Serious Medical Need

Plaintiff's allegation that Nurse Tina Howell and Dr. James Graham waited two months to refer him to a urologist implicates a potential claim for deliberate indifference to a serious medical need. In order to state a claim for deliberate indifference to a serious medical need, a prisoner must allege facts to show that he had a medical need that was objectively serious and that the defendant was deliberately indifferent to that need. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (quotation marks and citation omitted). Further, the condition must be one that would pose a "substantial risk

5

of serious harm" if left unattended.  *Farrow*, 40 F.3d at 1243.

An official acts with deliberate indifference when he or she "knows of and disregards an excessive risk to inmate health and safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Additionally, the disregard of risk must be "by conduct that is more than mere negligence." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011).  "Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." *Id.*  A prison official "who delays necessary treatment for non-medical reasons may exhibit deliberate indifference." *Id.*  Finally, "[a]n Eighth Amendment violation may also occur when state officials knowingly interfere with a physician's prescribed course of treatment." *Id.*

Here, Plaintiff has alleged that he had blood in his urine and severe kidney pain.  Accepting these allegations as true and construing them in Plaintiff's favor, he sufficiently alleged that he had a serious medical need.

Plaintiff's allegations with regard to Nurse Tina and Dr. Graham's knowledge of his condition are minimal.  Nevertheless, Plaintiff's allegations suggest that Nurse Tina and Dr. Graham were familiar with Plaintiff's situation.  Despite him having issues such as blood in his urine, Plaintiff alleges that Nurse Tina and Dr. Graham deliberately delayed his treatment for two months before they referred him to a urologist.

While it is not clear at this stage whether the delay may have been warranted, nothing on the face of the complaint demonstrates that there was a legitimate reason for the delay, and thus, it appears possible that these defendants may have been deliberately

indifferent to Plaintiff's serious medical need. Accordingly, Plaintiff will be permitted to proceed for further factual development on a deliberate indifference to a serious medical need claim against Defendants Nurse Tina Howell and Dr. James Graham.

B. <u>Deliberate Indifference to Health and Safety</u>

With regard to his contention that there is an issue with the safety of the water and that all of the defendants have ignored his complaints, Plaintiff's allegations implicate a potential claim for deliberate indifference to his health and safety. To state a claim for exposure to unsafe conditions, a prisoner must allege facts to show the existence of a prison condition that is extreme and poses an unreasonable risk of harm to the prisoner's health or safety.[2] *See Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). Additionally, the prisoner must allege facts to show that the defendant acted with deliberate indifference to the condition, which requires that the defendant knew that an excessive risk to health or safety existed but disregarded that risk. *Id.* at 1289-90.

As to the presence of such a condition, Plaintiff has arguably alleged enough facts to suggest that there is an unreasonable risk of harm to his health. In this regard, Plaintiff asserts that an excessive amount of fluoride in the water was causing him kidney problems. Although he does not present anything to conclusively show that the water was causing his problem, he has alleged that Nurse Tina and the urologist both told Plaintiff that it could

---

[2]Because Plaintiff was a pretrial detainee, rather than a convicted prisoner, when his claims arose, his deliberate indifference claim is governed by the Fourteenth Amendment due process clause, rather than the Eighth Amendment. Regardless, the standards governing such claims are the same under either amendment. *See Goodman v. Kimbrough*, 718 F.3d 1325, 1331 n.1 (11th Cir. 2013).

7

be causing his kidney issues.

With regard to the alleged deliberate indifference to the condition, Plaintiff asserts that he regularly spoke to Officers Marcus, Adside, Ford, Robinson, Mayes, and Butler about the water situation, and they all acknowledged that they knew that there was a problem with the water. These officers disregarded the issue, saying "no one's died yet," but they drank out of water bottles rather than drinking the jail's water. As to Captain King, Plaintiff asserts that King became angry when Plaintiff brought up the water and swore at Plaintiff.

Plaintiff does not specifically include any allegations as to Sheriff Richard Chatman's knowledge of the situation. Nevertheless, as the Sheriff, it is reasonable to assume that, if all of the officers were aware of an issue such as this that had been going on for more than ten years, Chatman would also have been aware of the issue and potential of danger to the detainees. Thus, accepting these allegations as true and construing them in Plaintiff's favor, it is possible that these defendants may have known that the water was not safe to drink and that they may have been deliberately indifferent to the risk of harm to the detainees, including Plaintiff. Thus, Plaintiff will be permitted to proceed for further factual development on his deliberate indifference to safety claim against Defendants Sheriff Richard Chatman, Captain Buster King, and Officers Enrique Marcus, Sharonda Adside, Bernice Ford, Robinson, Mayes, and Butler.

    C.    <u>Wilkinson County Water Authority and City of Irwinton</u>

Plaintiff names the Wilkinson County Water Authority, asserting that this entity may have tested the water at the jail. In the docket of this case, the City of Irwinton,

Georgia, is included as a defendant. Based on the caption, it appears possible that Plaintiff intended to include the City of Irwinton as a defendant. In the list of defendants, however, Plaintiff did not include the City of Irwinton as a separate defendant, but instead, he included it as the location for the Wilkinson County Water Authority. Regardless, as discussed below, even if he intended to include the City of Irwinton as a defendant, he has not stated a claim against the City.

It is not entirely clear whether the Wilkinson County Water Authority would be a proper defendant to this action. Regardless, assuming it is, Plaintiff has not alleged facts showing that the Wilkinson County Water Authority either was directly involved in any violation of his rights or that it was causally connected to any such violation. Instead, Plaintiff's allegation that the Wilkinson County Water Authority may have tested the water appears to be purely speculative, and Plaintiff makes no other allegations regarding this entity.

As to the City of Irwinton, a local government may only be sued for constitutional violations caused by "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Here, as with the Wilkinson County Water Authority, any suggestion that the City had tested the water is purely speculative. Moreover, Plaintiff makes no other allegations to support any claim that the City of Irwinton caused any constitutional violation. Thus, it is **RECOMMENDED** that Plaintiff's claims be **DISMISSED WITHOUT PREJUDICE** with regard to the Wilkinson County Water Authority and the City of Irwinton.

      D.      Retaliation

Plaintiff also suggests that he was retaliated against for filing this complaint. It is not clear whether Plaintiff intended this to be a separate claim, but in the interest of broadly construing Plaintiff's complaint, it will be addressed herein. "The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *Farrow*, 320 F.3d at 1248. Thus, a prisoner litigant may state a claim for retaliation by alleging that (1) he engaged in constitutionally protected speech, (2) he suffered an adverse action likely to "deter a person of ordinary firmness from engaging in such speech," and (3) there was a causal relationship between the speech and the retaliatory action. *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).

Plaintiff engaged in constitutionally protected speech when he filed this action, and he arguably suffered an adverse action insofar as his probation was revoked and he was sent to prison. Plaintiff does not, however, provide specific facts regarding who was responsible for revoking his probation or how. Moreover, his contention that his probation was revoked in retaliation for filing this action is speculative and conclusory. Plaintiff sets forth no specific factual allegations that to demonstrate an actual causal relationship in this regard. Thus, it is **RECOMMENDED** that any retaliation claim be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

      IV.      Conclusion

Thus, as set forth above, it is **RECOMMENDED** that Plaintiff's claims against the Wilkinson County Water Authority and the City of Irwinton be **DISMISSED WITHOUT PREJUDICE**. It is also **RECOMMENDED** that any retaliation claim be **DISMISSED**

**WITHOUT PREJUDICE**. Plaintiff will be permitted to proceed for further factual development on his deliberate indifference to a serious medical need claim against Defendants Nurse Tina Howell and Dr. James Graham and his deliberate indifference to safety claim against Sheriff Richard Chatman, Captain Buster King, and Officers Enrique Marcus, Sharonda Adside, Bernice Ford, Robinson, Mayes, and Butler.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Order with the United States District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Order. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

For those reasons discussed above, it is hereby **ORDERED** that service be made on **DEFENDANT SHERIFF RICHARD CHATMAN, CAPTAIN BUSTER KING, and OFFICERS ENRIQUE MARCUS, SHARONDA ADSIDE, BERNICE FORD, ROBINSON, MAYES, and BUTLER,**[3] and that they file an Answer, or other response

---

[3] Service has already been made on Nurse Tina Howell and Dr. James Graham. Waiver of Service Returned Executed, ECF No. 13; USM 285 Process Receipt and Return, ECF No. 19. As the amended complaint supersedes the original complaint, they also must file an answer or other appropriate response to the amended complaint.

as appropriate under the Federal Rules, 28 U.S.C. § 1915, and the Prison Litigation Reform Act. Defendants are also reminded of the duty to avoid unnecessary service expenses, and the possible imposition of expenses for failure to waive service.

### DUTY TO ADVISE OF ADDRESS CHANGE

During this action, all parties shall at all times keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of any change of address may result in the dismissal of a party's pleadings.

### DUTY TO PROSECUTE ACTION

Plaintiff must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) for failure to prosecute. Defendants are advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

### FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the

unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished (i.e., by U.S. Mail, by personal service, etc.).

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of Defendants from whom discovery is sought by Plaintiff. Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure. Plaintiff's deposition may be taken at any time during the time period hereinafter set out, provided that prior arrangements are made with his custodian. Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Fed. R. Civ. P. 37 of the Federal Rules of Civil Procedure.

**IT IS HEREBY ORDERED** that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by Defendants (whichever comes first) unless an extension is otherwise granted by the Court upon a showing of good cause therefor or a protective order is sought by Defendants and granted by the Court. This 90-day period shall run separately as to each Defendant beginning on the date of filing of each Defendant's answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that

13

discovery has been completed prior to the deadline.

Discovery materials shall <u>not</u> be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him or served upon him by the opposing counsel/party. The undersigned incorporates herein those parts of the Local Rules imposing the following limitations on discovery: except with written permission of the Court first obtained, INTERROGATORIES may not exceed TWENTY-FIVE (25) to each party, REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and REQUESTS FOR ADMISSIONS under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party. No party is required to respond to any request which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

Dismissal of this action or requests for judgment will not be considered by the Court in the absence of a separate motion accompanied by a brief/memorandum of law citing supporting authorities. Dispositive motions should be filed at the earliest time possible, but no later than one hundred-twenty (120) days from when the discovery period begins.

**SO ORDERED and RECOMMENDED**, this 18th day of March, 2022.

/s/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE